## Case No. 9,648.

### The MISPAH.

[5 Reporter, 519.] [1]

Circuit Court, D. Delaware. April 1, 1878.

SHIPPING—AFFREIGHTMENT—OBLIGATION TO SIGN BILLS OF LADING—DEMURRAGE—CHARTER PARTY—MEASURE OF DAMAGES.

1. A charter party stipulating that demurrage shall be paid day by day, and that the master shall sign bills of lading, requires the master to sign bills, although demurrage may be at the time due and unpaid.

2. In an action on the contract to compel the signing of bills the libellant can recover only the actual expense incurred and rendered necessary by the master's refusal.

[Appeal from the district court of the United States for the district of Delaware.]

The bark Mispah was chartered by Wright & Co., to be loaded with a cargo of grain at Philadelphia for Belfast. The charter party provided inter alia for thirty-two running lay-days at the first-named port, and demurrage at the rate of 16 pounds per day thereafter, payable day by day, the master to sign bills of lading as requested without prejudice to the charter, the charterer's responsibility to and on the shipment of the cargo, the vessel to have a lien for freight and demurrage. The charterers consumed the lay-days in loading, and in three days in addition; for two of these days they paid demurrage, but refused, though without denying liability, to pay for the third. At that time there were on board 40,000 bushels of grain for which no bill of lading had been signed, and the master refused to sign unless the charterers would pay the demurrage or indorse the amount due on the bills. This not being done, and after notice, the master sailed with the cargo and without signing the bills. The vessel being beyond the jurisdiction of the court at Philadelphia, an attachment was obtained from the district court for Delaware, and under it the vessel was arrested in Delaware Bay. The master then, under an interlocutory order, signed the bills and gave security. The libellants were awarded by the court for the breach of charter $225 for the actual expense of the attachment and arrest (tug hire, &c.), and in addition exemplary damages, making

[1] [Reprinted by permission.]

the whole award $500. The respondent appealed.

J. Warren Coulston, for appellant.

The master was justified in sailing as he did. He would have lost the demurrage if he had signed the bills, as requested, and they had passed to an innocent purchaser. Kay, Shipm. 325, and cases cited. The manifest sufficiently showed the cargo he was to deliver. Ben. Adm. 286. In no case can the decree for exemplary damages be sustained.

H. G. Ward and Henry Flanders, contra.

The master was guilty of trespass in carrying away the goods without giving a bill of lading, and the exemplary damages were properly given. Bennett v. Lockwood, 20 Wend. 222; Miller v. Garling, 12 How. Prac. 203. He was bound to sign the bills, and had no lien at the port of lading. Francesco v. Massey, L. R. 8 Exch. 101; Kish v. Cory, L. R. 10 Q. B. 553; Christoffersen v. Hansen, L. R. 7 Q. B. 509; Pedersen v. Lotinga, 5 Wkly. Rep. 290; French v. Gerber, 1 C. P. Div. 739.

McKENNAN, Circuit Judge. I think the court below was right in holding that charterers were in culpable default in refusing to pay the demurrage confessedly due the master, or to make such an indorsement on the bills of lading as would evince his right to enforce his lien upon the cargo for it at the port of discharge. I am also of opinion that the master mistook his remedy for this wrong; that when he sailed from the port of Philadelphia without first signing proper bills of lading, he violated the charter party, and that the vessel is liable for the damages directly resulting from this unwarranted departure. But the method adopted in the assessment of damages was clearly erroneous. The master was in no sense a trespasser. He was lawfully in possession of the cargo in pursuance of the charter party, and his liability occurred solely from his breach of one of its stipulations, which required him to sign bills of lading before sailing. It was therefore simply a cause of contract, and is properly exclusively so treated in the libel. Even then, if the master's conduct had been attended by circumstances of aggravation, which would in an action of trespass justify the imposition of exemplary damages under the form of libel, the libellants are entitled to compensatory damages merely, and these are to be measured by the expenses incurred in pursuing the vessel and asserting their right to the fulfilment of the charter party. The expenses thus incurred are shown to amount to $225, and for this sum there must be a decree ———— with the costs of the suit in the district court ————, the costs of this court to be paid by libellants.